**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LAYTORA ROBERTSON, individually
and on behalf of all others similarly situated,

                Plaintiff,                     Civil Action No. 15-1970(CCC)(JBC)

v.                                   Motion Returnable: 12/21/2015

ENHANCED RECOVERY COMPANY, LLC,

                Defendant.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**ENHANCED RECOVERY COMPANY, LLC'S MOTION FOR**
**JUDGMENT ON THE PLEADINGS**

SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 907-9700
*Attorneys for Defendant*
*Enhanced Recovery Company, LLC*

# **TABLE OF CONTENTS**

Table of Contents .............................................................................................i

Table of Authority ...........................................................................................ii

Memorandum of Law .......................................................................................1

    I.     Introduction ..........................................................................................1

          A. Issue before the Court .........................................................................1

          B. Standard of Review .............................................................................1

    II.    ERC is entitled to judgment on the pleadings because the Agreement is clear: the fee is chargeable to the consumer at the time the account is referred to a third-party collector. ...............................3

          A. Section 1692f allows a debt collector to collect fees from consumers when authorized in the underlying contract........................4

          B. The Agreement expressly authorizes Verizon to charge a fee and to do so at a fixed percentage before it incurs any costs. ................5

          C. ERC is entitled to judgment on the pleadings on *all* claims brought by Plaintiff because she authorized the 18% fee. ....................13

    III.   Due to the nature of the inquiry, the value of Plaintiff's cited case law is limited to the analytical framework used by those courts. ...............14

    IV.   Conclusion ...........................................................................................18

SGR/13407484.2

# **TABLE OF AUTHORITY**

## **Statutes:**

15 U.S.C.A. § 1692e (2014). ...............................................................3, 4, 13, 14

15 U.S.C.A.. § 1692e (2)(A) (2014). ................................................13, 14

15 U.S.C.A. § 1692e (5) (2014)..........................................................13, 14

15 U.S.C.A. § 1692f (2014)........................................................3, 13, 14

15 U.S.C.A. § 1692f (1) (2014). .......................................................*passim*

## **Rules:**

Fed. R. Civ. P. 10 .........................................................................2

Fed. R. Civ. P. 12 .........................................................................1

## **Case Law:**

*Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006)..................................2

*Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3d Cir. 2011). ....................................2

*Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289 (3d Cir. 1988). ................1

*Kaymark v. Bank of America*, 783 F.3d 168 (3d Cir. 2015). ...................................6, 7

*Pollice v. Nat. Tax Funding, LP*, 225 F.3d 379 (3d Cir. 2000). ............................1, 4

*Tuttle v. Equifax Check*, 130 F.3d 9 (2d Cir. 1999)..............................................4, 5

*Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1113 (7th Cir. 2008)..............................10, 11

*Kojetin v. C U Recovery, Inc.*, 212 F.3d 1318 (8th Cir. 2000) ............................7, 8

*Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606
(11th Cir. 2014)..........................................................................7, 8

*Hernandez v. Miracle Fin., Inc.*, No. 11-4074 (JLL), 2011 WL 6328216
(D.N.J. Dec. 13, 2011). ...............................................................15, 17

*Butto v. Collecto, Inc.*, 290 F.R.D. 372 (E.D.N.Y. 2013)..................................14, 15

*Gathuru v. Credit Control Servs., Inc.*, 623 F. Supp. 2d 113
(D. Mass. 2009)........................................................................11, 12, 16

SGR/13407484.2

<u>**MEMORANDUM OF LAW**</u>

**I.      Introduction**

**A. Issue before the Court**

The FDCPA prohibits the collection of a fee incidental to the debt being collected unless such amount is expressly authorized by the agreement creating the debt, or is otherwise permitted by law. In her agreement with Verizon Wireless ("Verizon"), Ms. Robertson agreed to pay Verizon a fee of 18% if, and when, Verizon referred her account to collection for non-payment. Verizon did, in fact, refer Ms. Robertson's account to ERC for collection. ERC, on behalf of Verizon, sought to collect from Ms. Robertson the 18% fee owed to Verizon. Because the fee at issue was expressly authorized by Plaintiff's agreement with Verizon, ERC did not violate the FDCPA by seeking to collect the fee owed to Verizon. Accordingly, ERC is entitled to judgment on the pleadings in its favor.

**B.  Standard of Review**

A district court should enter judgment on the pleadings when the movant clearly establishes, even when "view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party[,]" that there are no material issues of fact and it is entitled to judgment as a matter of law. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988) (*citing* Fed. R. Civ. P. 12 (c)).

SGR/13407484.2

Documents attached to the Complaint are a part of the Complaint for all purposes. Fed. R. Civ. P. 10 (c). Whether an alleged FDCPA claim could be based on a letter's language can be properly determined as a matter of law on the pleadings. *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 n.5 (3d Cir. 2011). Additionally, the Court may consider documents either incorporated into the Complaint by reference or integral to the asserted claims. *Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Plaintiff attached ERC's letter of August 13, 2014 (the "Letter") to the Complaint and, thus, it is properly considered a part of the pleadings under Rule 10.[1] Additionally, the Complaint both refers to the contract between Plaintiff and Verizon and asserts claims for which the terms of the agreement are integral. Specifically, in paragraphs 21 and 22 of the Complaint, Plaintiff alleges that the fee at issue is unauthorized and is not due and owing. A claim for violation of 15 U.S.C.A. § 1692f (1) hinges on whether or not the fee at issue is "expressly authorized" by the underlying agreement with the creditor, thus making the agreement with Verizon integral to the claim.

Plaintiff concurs the agreement is integral to the claims and the parties have stipulated to its consideration in connection with this motion. Furthermore, after engaging in limited discovery on the issue, the parties agree and stipulate that the

---

[1] The Letter is attached to the Declaration of Peter G. Goodman, dated October 30, 2015 ("Goodman Declaration") as Exhibit A.

applicable agreement is the Verizon Wireless Agreement with an effective date of November 2012 (the "Agreement"). *See* Letter to Magistrate, DE 17 at 2. Accordingly, the agreement between Plaintiff and Verizon may properly be considered on this motion and is attached to the Goodman Declaration as Exhibit B.

## II. ERC is entitled to judgment on the pleadings because the Agreement is clear: the fee is chargeable to the consumer at the time the account is referred to a third-party collector.

Plaintiff asserts claims under various subsections of 1692e and 1692f of the FDCPA. But all of her claims depend on the threshold allegation that ERC charged her a collection fee she did not authorize in the agreement creating the debt at issue, an act specifically addressed by subsection 1692f (1). Although Plaintiff cites other subsections of the FDCPA, all of the violations alleged hinge on whether section 1692f (1) was violated. This conclusion is acknowledged by Plaintiff in the parties' joint letter to Magistrate Judge Clark filed on October 6, 2015 (DE 17). Accordingly, ERC is entitled to judgment as a matter of law on all of Plaintiff's claims because she specifically authorized Verizon, through the Agreement, to charge a fee of 18% upon referral of the account for collection. Because Plaintiff authorized the fee, there is no violation of the FDCPA in attempting to collect the fee.

SGR/13407484.2

## A. Section 1692f allows a debt collector to collect fees from consumers when authorized in the underlying contract.

Section 1692f prohibits collectors, generally, from engaging in unfair or unconscionable practices in the collection of a debt. Its first subsection states, "the following conduct is a violation of this section: (1) the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) <u>unless such amount is expressly authorized by the agreement creating the debt</u> or permitted by law." 15 U.S.C.A. § 1692f (1) (2014) (emphasis supplied).

This provision has been interpreted to imply a three-part test for whether a fee is authorized. *See Tuttle v. Equifax Check*, 130 F.3d 9 (2d Cir. 1999). The *Tuttle* test states:

> *If state law expressly permits service charges,* a service charge may be imposed even if the contract is silent on the matter;
> *If state law expressly prohibits service charges,* a service charge cannot be imposed even if the contract allows it;
> *If state law neither affirmatively permits nor expressly prohibits service charges,* a service charge can be imposed only if the customer expressly agrees to it in the contract.

*Id.* (emphasis in original). The Third Circuit has cited this test with approval. *See Pollice v. Nat. Tax Funding, LP*, 225 F.3d 379, 408 (3d Cir. 2000).

In *Tuttle*, the fee at issue was truly a service charge, as indicated by the language the Second Circuit used to formulate its test. The collector sought to collect on a returned check and added a twenty dollar fee to its face value. The consumer argued the only amount authorized to be collected was the face value of

4

the check. But the Second Circuit held Connecticut law allowed for a fee to be added for returned checks. Additionally, the court held the consumer authorized the fee by writing a check at a register that had a clear sign stating each returned check would be subject to a twenty dollar service charge. *Id.* at 15.

ERC neither imposes nor retains the fee at issue here. As evidenced by the Agreement, the amount referenced in the Letter as "Collection Fees," is the 18% fee Plaintiff authorized in her Agreement with Verizon, and is the amount charged by the original creditor, Verizon.[2] ERC collects this fee on behalf of, and for the benefit of, Verizon. ERC's Letter sought to collect only those amounts due from Ms. Robertson as expressly authorized by her Agreement with Verizon, nothing more.

Plaintiff does not allege New Jersey law expressly prohibits a fee from being added to the debt by the original creditor (or a collector) for non-payment. And ERC does not rely on a New Jersey law to charge the fee. Accordingly, under *Tuttle*, the Court must look to the language of the agreement creating the debt.

### B. The Agreement expressly authorizes Verizon to charge a fee and to do so at a fixed percentage before it incurs any costs.

The Third Circuit has made it clear the text of the underlying agreement must be consulted when collection fees are alleged to violate the FDCPA. *See*

---

[2] As reflected in the Letter, the principal amount due was $202.03. The "Collection Fees" of $36.36 is 18% of the principal amount due, rounded down to the nearest penny.

SGR/13407484.2

*Kaymark v. Bank of America*, 783 F.3d 168, 175 (3d Cir. 2015). In *Kaymark*, the collector law firm filed a foreclosure complaint, in which it itemized $1,650 in attorneys' fees owed. The consumer alleged the attempt to collect $1,650 at the time of the filing of the complaint violated section 1692f (1) of the FDCPA. In determining whether the consumer stated a claim under the FDCPA, the Third Circuit looked to the agreement creating the debt.

The court found the underlying agreement provided for the collection of fees incurred by the creditor. The two provisions the court found relevant were:

> Lender may charge Borrower fees for services *performed in connection with* Borrower's default and for the purpose of protecting Lender's interest in the Property and rights under this Security Agreement, including, but not limited to, attorneys' fees, property inspection and valuation fees.
>
> * * *
>
> If the default is not cured as specified . . . . Lender shall be entitled to collect all expenses *incurred* in pursuing the remedies provided in this Section [], including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

*Id.* at 172 (emphasis in original). The court reasoned this language allowed the collector to charge the consumer only for *incurred* fees. Charging the fees before they were incurred, i.e. before they were authorized, the court found, potentially violated section 1692f (1). In reaching this conclusion, the court reasoned:

> To be sure, Kaymark expressly agreed to the collection of certain fee categories, such as "attorneys' fees, property inspection and valuation fees." But the contract also specified that BOA could only charge for

6

> "services *performed* in connection with" the default and collect "all expenses *incurred*" in pursuing authorized remedies.

*Id*. at 175 (emphasis in original) (internal citations omitted). It found the collector was not entitled to charge for "not-yet-performed" legal services. *Id.* The court further noted that its holding comported with its sister circuits. *Id.*

Both the Eighth and Eleventh Circuit Courts of Appeal have held, like the Third Circuit implied, charging a consumer fees does not violate the FDCPA when it is consistent with the terms of the agreement. In *Kojetin v. C U Recovery, Inc.*, the collector added a percentage-based fee to the consumer's debt and the Eighth Circuit found this was inconsistent with the consumer's agreement, which provided only for the addition of "actual costs" of collection. 212 F.3d 1318 (8th Cir. 2000). In *Bradley v. Franklin Collection Service, Inc.*, the Eleventh Circuit found a flat 33% fee added by the collector to be inconsistent with the consumer's authorization for "actual costs." 739 F.3d 606 (11th Cir. 2014). In reaching its conclusion, the Eleventh Circuit noted: "[t]his is not to say that [the consumer] and [the creditor] could not have formed an agreement allowing for the collection of the percentage-based fee. It is the nature of the agreement between [the consumer] and [the creditor], not simply the amount of the fee that is important here." *Id.* at 610.

Accordingly, the underlying agreement controls what fees can be charged and when they can be charged to the consumer. The collection of a fee in a way

7

consistent with the underlying agreement does not violate section 1692f (1) and a FDCPA claim based on such actions fails as a matter of law.

There is no dispute as to which agreement is applicable to Plaintiff's claims. As discussed in Part I, *supra*, Plaintiff and ERC have stipulated the agreement applicable to her account is Verizon's Wireless Agreement with an effective date of November 2012 (the "Agreement"); it has been submitted for the Court's reference.

The Agreement provides for a fee of 18% on page 6 of the exhibit, in the section detailing the charges a consumer authorizes in the event payment is late, or the account is referred to collection, suspended or terminated. It reads:

> Late fees are part of the rates and charges you agree to pay us. If you fail to pay on time and Verizon Wireless refers your account(s) to a third party for collection, Verizon Wireless will charge a collection fee at the maximum percentage permitted by applicable law, but not to exceed 18 percent, to cover collection-related costs.

Agreement at 6.

The Agreement is clear: Verizon may charge 18% of the overdue amount if the account is referred to a third-party collector. This is the fee Plaintiff alleges violated the FDCPA. *See* Compl. at ¶ 13. As the Eleventh Circuit affirmatively stated, a consumer and a creditor may agree to a percentage-based fee in the underlying contract. The *Kojetin* and *Bradley* courts found violations based on the charging of a percentage-based fee only because the underlying agreements did not

expressly allow for a percentage-based fee and, instead, provided solely for "actual costs" of collection. To the contrary here, the 18% fee is expressly authorized in the Agreement, and is not based on actual costs.

Plaintiff's allegation that "[t]he collection fee bears no relation to and are [sic] substantially greater than costs actually incurred by Defendant or the Original Creditor in their attempt to collect the account"[3] is wholly irrelevant here. Plaintiff's foregoing allegation presumes that the Agreement only authorizes Verizon to charge actual costs incurred in the collection of the debt. That presumption is false. The Agreement clearly authorizes a fee of 18% of Plaintiff's unpaid balance, which amount could be greater than or less than actual costs of collection.

Additionally, Plaintiff's Complaint incorrectly suggests ERC is attempting to pass its charges on to her as part of her debt. To be clear, she agreed to the 18% fee with Verizon. ERC sought to collect the fee *for* Verizon as part of Plaintiff's total indebtedness to Verizon. As evidenced by the Verizon Agreement, the fee at issue is not imposed by ERC and is not directly tied to ERC's compensation for performing collection services. As the *Bradley* court noted—there is no legal requirement that the fee be tied to actual costs.

---

[3] Compl. at ¶ 20.

SGR/13407484.2

In addition to controlling what fees can be charged, the text of the underlying agreement also controls *when* such fees can be charged. *See Kaymark*, 783 F.3d at 176. In *Kaymark*, the consumer agreed to pay attorneys' fees; however, the agreement only provided for collection of such fees *after* they were incurred. *Id.* Thus, the court found itemizing the fees in the foreclosure complaint, before they were incurred, was inconsistent with the express terms of the agreement. *Id.*

Likewise, the Seventh Circuit looked to the underlying agreement to evaluate the temporal aspect of the accrual of the fees being collected in analyzing the FDCPA claims. *See Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1113 (7th Cir. 2008) (*Seeger II*). In *Seeger II*, which the Plaintiff cites in the Complaint,[4] the Seventh Circuit affirmed summary judgment in favor of the consumer where it established neither state law nor the underlying agreement authorized charging collection fees. *Id.* The Seventh Circuit adopted the reasoning of the trial court regarding whether the contract allowed for the collector to seek a collection fee from the consumer at the outset of collection. It stated:

> [t]he language of the contract does not simply state that a customer agrees to 'pay all costs including . . . collection fees.' Rather, the contract states that the customer agrees to 'pay all costs including . . . collection fees . . . we incur in enforcing this Agreement.' As with the provision referencing reimbursement, a collection fee which is never paid is not a cost that [the creditor] would incur.

---

[4] *See* Compl. at ¶ 23.

10

*Id.* (omissions in original). Under *this* language, the court found, incurred collection costs could be passed on to the consumer, but no fees could be charged *before* they were incurred.

Likewise, the FDCPA prohibits collecting a fee before it is incurred when the consumer agreed only to repay the creditor for collection costs. *See Gathuru v. Credit Control Servs., Inc.*, 623 F. Supp. 2d 113 (D. Mass. 2009). In *Gathuru*, the collector sought from the consumer a 30% collection charge, which corresponded with the fee the collector charged to the creditor pursuant to their agreement. However, this fee was paid to the collector only *after* it collected the debt from the consumer. *Id.* at 116.

The *Gathuru* court held while there was nothing *per se* impermissible about charging a flat 30% fee, the agreement only obligated the consumer to repay the creditor collection fees it had actually paid. *Id.* at 120. Because the 30% fee had not been paid by the creditor when it was sought, the court found, it was not *yet* authorized under the agreement.

In contrast to the agreements analyzed in the foregoing cases, the Verizon Agreement here does not depend on actual costs incurred by Verizon. The Agreement states: "If you fail to pay on time and Verizon Wireless refers your account(s) to a third party for collection, Verizon Wireless will charge a collection fee[.]" The only condition precedent to Verizon charging Plaintiff the fee is the

11

referral of Plaintiff's account to a third-party collector. Accordingly, the fee accrues and is due from Plaintiff to Verizon when Verizon "refers [Plaintiff's] account(s) to a third party for collection." The accrual of the fee is in no way contingent on how much or when ERC charges or receives payment from Verizon. Thus, neither the contractual relationship between ERC and Verizon, nor the method or timing of any compensation pursuant to that relationship, is in any way relevant to the Plaintiff's claim.

Plaintiff's complaint misstates the relevant analysis. Plaintiff alleges the collection fee in the Letter represented ERC's contingent fee with Verizon.  As evidenced by the Verizon Agreement, it does not. Plaintiff's claim is premised on this false assumption. Plaintiff alleges that, because no amounts have been collected, Verizon has not paid any amounts to ERC and, therefore, she concludes no fee was due from her. *See* Compl. at ¶¶ 13-19. She thus concludes that ERC's Letter violated the FDCPA. *Id.* at ¶¶ 19, 23. In making these allegations, Plaintiff tracks the analysis of the *Gathuru* court in the hopes that this Court will fail to recognize the false premise of her claim. The *Gathuru* court only looked to the agreement between the collector and the creditor because the agreement creating the debt only obligated the consumer to repay actual collection costs.

The agreement between Verizon and ERC is irrelevant here because the Agreement authorizes a flat percentage-based fee **upon referral to a third-party**

**collector**. If the contract creating the debt expressly authorizes a flat charge, like the Agreement here, then there is no need to look to any other facts. It is only when the entitlement to the collection fee is contingent on actual costs incurred that extrinsic facts must be considered. Thus, the question of what fees Verizon paid ERC at the time of the Letter is completely irrelevant to what Plaintiff expressly agreed to pay Verizon in the Agreement. Because Plaintiff agreed to pay Verizon a flat fee of 18%, upon referral to a third-party collector, whether Verizon paid ERC a fee before it sent the Letter is completely immaterial.

### C. ERC is entitled to judgment on the pleadings on *all* claims brought by Plaintiff because she authorized the 18% fee.

All of Plaintiff's claims under the FDCPA are based on the alleged violation of section 1692f (1). She alleges, in wholly conclusory fashion, that the Letter violated sections 1692e, 1692e (2)(A), 1692e (5), and 1692f.[5] Compl. at ¶ 23. Plaintiff alleges no additional facts to support these claims; only that ERC sent the Letter which sought to "collect prohibited 18% collection fees." *Id.* at ¶ 24. Thus all of her claims depend on the allegation the 18% fee was unauthorized.

---

[5] Although not stated in the Complaint, these subsections prohibit collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" 15 U.S.C.A. § 1692e (2014), "false[ly] represent[ing] . . . the character, amount, or legal status of any debt," 15 U.S.C.A.. § 1692e (2)(A) (2014), "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C.A. § 1692e (5) (2014), and "us[ing] unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C.A. § 1692f (2014).

13

Plaintiff acknowledges this fact. In their letter to Judge Clark regarding this motion, Plaintiff and ERC stipulated that:

> whether a collection fee was authorized by the November 2012 subscriber agreement at the time the letter was sent, also controls the remaining claims in this matter. Thus, all of the claims at issue in the proceeding under various subsections of 15 U.S.C. §§ 1692e and 1692f, hinge on whether the fee was authorized at the time ERC sent the letter to Ms. Robertson. If the fee was authorized by the agreement, then the Complaint fails to state a claim under the FDCPA.

DE 17 at 2. Accordingly, all of Plaintiff's claims fail because ERC's Letter sought only to collect the fee Plaintiff agreed to pay Verizon in their Agreement.

### III.   Due to the nature of the inquiry, the value of Plaintiff's cited case law is limited to the analytical framework used by those courts.

Plaintiff cites three opinions in her Complaint to support the allegation that "[t]he representation that an 18% collection fee is owed violates 15 U.S.C. §§ 1692e, 1692e (2)(A), 1692e(5), 1692f, and 1692f(1)." Compl. at ¶ 23. Because the particular agreements creating the debt must be looked to under section 1692f (1), the cited decisions cannot stand for such a broad proposition.

Of Plaintiff's three cited opinions, only one involves collection fees sought on accounts originating from Verizon. *See Butto v. Collecto, Inc.*, 290 F.R.D. 372 (E.D.N.Y. 2013). As Plaintiff notes, the court granted the consumer's motion for class certification for all New York consumers who received letters seeking collection fees for Verizon Wireless that had not yet been incurred. *Id.* at 378.

14

However, as this matter was filed in June 2010, it is clear the Agreement, which became effective in November 2012, was not at issue in *Butto*. *See id.* at 377. Hence this opinion is irrelevant here.

Although not cited by Plaintiff, Judge Linares also analyzed a claim based upon the collection of an 18% collection fee pursuant to a Verizon contract different than the Agreement applicable here. *See Hernandez v. Miracle Fin., Inc.*, No. 11-4074 (JLL), 2011 WL 6328216 (D.N.J. Dec. 13, 2011). In *Hernandez*, the consumer brought suit under the FDCPA for the attempt to collect an allegedly unauthorized fee. In ruling on a motion to dismiss, Judge Linares considered the underlying agreement, finding that under Third Circuit jurisprudence it was properly considered on a motion to dismiss. *Id.* at *4 n.3. The underlying agreement between Verizon and the consumer read,

> [i]f we use a collection agency to collect from you, we may charge you for any fees the collection agency charges us, if allowed by law in the state of your billing address when we first send your account to a collection agency.

*Id.* at *4. Under this language, the court found, the attempt to collect an 18% fee, *before* the collector actually charged the creditor, stated a claim under the FDCPA. *Id.* at *3.  Once again, the decision hinged on the fact that the agreement provided for a fee tied to the <u>actual</u> charges from the collection agency, and did not authorize a flat fee, independent of the <u>actual</u> charges.

SGR/13407484.2

The difficulties of the creditor receiving the benefit of its bargain under such reimbursement language were recognized by the *Gathuru* court. There the court analyzed the problem of seeking collection costs under a reimbursement agreement when the creditor pays a contingent collection fee, as is alleged by Plaintiff here. It summarized:

> at the time the debt was referred to [the collector], plaintiff owed $1,545 to [the creditor]. If [the collector] successfully collected that amount, it had the right to charge [the creditor] a 30% fee (or $463). If [the collector] charged that fee, [the creditor] had the right to pass on that fee to plaintiff. But at the time the first collection notice was sent, [the creditor] did *not* owe [the collector] $463—not yet, anyway. And therefore plaintiff did not owe [the creditor] $2,008 ($1,545 + $463)—again, not yet. . . .
>
> Of course, if plaintiff did pay the $1,545, he would owe the additional $463. The distinction may therefore seem trivial, or even ridiculous. Among other things, it means that the plaintiff owed $1,545 if he *did not* pay the debt, and $2,008 if he *did*. It also means that the debt collector could not legally collect all sums due in a single transaction (at least without the consent or waiver of the debtor). But that is the result dictated by the statute and the [a]greement. [The collector] accordingly attempted to collect a debt that had not been incurred, in violation of the FDCPA. . . .
>
> To make matters more complicated, the debt collector cannot ignore the existence of the contingent debt in its collection letters, as that would almost certainly be misleading. For example, a letter that stated or suggested that the debt would be extinguished if plaintiff paid $1,545 would almost certainly be improper.

*Gathuru*, 623 F. Supp. 2d at 120-21 (emphasis in original). As the court noted, although the consumer was obligated to pay the costs of collection, it would be impossible for the creditor to "legally collect all sums due in a single transaction"

SGR/13407484.2

and difficult to craft collection letters that accurately reflected the consumer's obligation without misleading the consumer.

As noted by the *Hernandez* court, previous versions of Verizon's contract with its wireless subscribers used similar language, leading to the same conundrum of being unable to collect the collection fee at the same time amounts were collected from the debtor. The Verizon contract at issue in *Hernandez* stated:

> [i]f we use a collection agency to collect from you, we may charge you for *any fees the collection agency charges us*, if allowed by law in the state of your billing address when we first send your account to a collection agency.

*Hernandez*, 2011 WL 6328216, at *4 (quoting previous Verizon contract) (emphasis supplied). Under this language, the creditor must pay the collector as a condition precedent to the consumer's obligation for payment of collection fees.

Turning to the version of the Verizon Agreement applicable here, i.e., the November 2012 version, the Agreement obligates Plaintiff to pay Verizon a flat, percentage-based fee upon referral to a collector. It states:

> If you fail to pay on time and Verizon Wireless refers your account(s) to a third party for collection, *Verizon Wireless will charge a collection fee at the maximum percentage permitted by applicable law, but not to exceed 18 percent*, to cover collection-related costs.

Agreement at 6 (emphasis supplied). This shift away from reimbursement language avoids the convoluted temporal issues noted by the *Gathuru* court and allows Verizon to fully realize the benefit of its bargain with the consumer.

17

Here, it is clear that Plaintiff is obligated to pay Verizon a fee of 18% of the principal amount of the debt at the time Verizon refers it to a third party for collection. Plaintiff's Complaint, the Letter and the Agreement establish that all of the conditions precedent to accrual of the fee at issue were satisfied at the time the Letter was sent to Plaintiff. Accordingly, the Letter sent by ERC sought nothing more than a fee expressly authorized by the Verizon Agreement and did not violate 15 U.S.C.A. § 1692f (1) or any other provisions of the FDCPA.

## IV.   Conclusion

Plaintiff's claims against ERC depend on her allegation that the 18% fee referenced in the Letter was not authorized by the Verizon Agreement. Unlike prior versions of Verizon Wireless agreements, as analyzed in the opinions referenced above, the Agreement at issue here does not use reimbursement language, and thereby avoids the temporal conundrum of which Plaintiff seeks to take advantage. Plaintiff cannot avoid the plain and clear language of the version of the Verizon Agreement applicable here. Plaintiff became obligated to pay Verizon a fee of 18% upon referral of the account to ERC for collection. The allegations of the Complaint, together with the Letter and the Verizon Agreement, establish this as a matter of law. Accordingly, ERC is entitled to a judgment on the pleadings for all claims asserted by Plaintiff.

SGR/13407484.2

Dated:  October 30, 2015

Respectfully submitted,

SMITH, GAMBRELL & RUSSELL, LLP


By:   /s/ Peter G. Goodman
        Peter G. Goodman
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Phone: (212) 907-9700
Fax:     (212) 907-9800
pgoodman@sgrlaw.com

*Attorneys for Defendant*
*Enhanced Recovery Company, LLC*

19

SGR/13407484.2